**Darrell C. McCORMICK, Chief Petty Officer, United States Navy, Plaintiff,**

v.

**W. Graham CLAYTOR, Jr., Secretary of the Navy, Vice-Admiral J. D. Watkins, Chief of Naval Personnel, and W. E. James, Commanding Officer, Coos Head Naval Facility, Defendants.**

Civ. No. 77–677.

United States District Court,
D. Oregon.

Nov. 4, 1977.

Harry T. Carp, Eugene, Or., for plaintiff.

Craig J. Casey, Asst. U. S. Atty., Portland, Or., for defendants.

## OPINION

BURNS, District Judge:

Plaintiff, Chief Petty Officer Darrell McCormick, is seeking a preliminary injunc-

tion to prevent his imminent discharge from the Navy. A temporary restraining order, issued on August 24, 1977, and reviewed at last week's hearing, expires at noon today.[1]

The Chief of Naval Personnel ordered plaintiff discharged pursuant to the recommendation of the Petty Officer Quality Control Review Board (Review Board). The evaluation of plaintiff's status by the Review Board was part of a quality review of all chief petty officers which was being conducted by the Review Board in accordance with the orders of the Chief of Naval Personnel.

Plaintiff raises two basic objections to the course followed by the Navy in deciding to discharge him: 1) the Navy failed to follow its own regulations; 2) the procedure followed by the Navy, and especially its failure to give plaintiff adequate notice of the reasons for his discharge, deprived plaintiff of due process.

My jurisdiction is based on 28 U.S.C. § 1331. Plaintiff has exhausted his pre-discharge administrative remedies; *Schwartz v. Covington*, 341 F.2d 537 (9th Cir. 1965), makes it clear that exhaustion of post-discharge remedies is not a prerequisite to my assumption of jurisdiction. *See also Nelson v. Miller*, 373 F.2d 474 (3d Cir. 1974).

The standard to be applied in deciding whether to issue a preliminary injunction is set out in *William Inglis and Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86 (9th Cir. 1975). In *Inglis*, the Ninth Circuit Court of Appeals held that one seeking a preliminary injunction must demonstrate "*either* a combination of probable success and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." The second test may also be stated: "If the harm that may occur to the

---

1. In this case a hearing was held on September 2, 1977, following issuance of a temporary restraining order on August 24, 1977. I continued the hearing (and the T.R.O.) until September 9, 1977. On September 9, we had brief additional testimony, plus oral arguments by counsel, at the conclusion of which I delivered an oral opinion. The oral opinion was based on notes and a rough draft. It has now been reduced to writing and edited slightly for purposes of publication.

plaintiff is sufficiently serious, it is only necessary that there be a fair chance of success on the merits."

McCormick has been an enlisted serviceman in the United States Navy for over 17 years. He will become eligible for retirement and medical benefits at the expiration of his current enlistment on November 29, 1979, if he is allowed to remain in the Navy until that time. If the Navy succeeds in separating plaintiff now, he will lose all entitlement to these benefits.

Although plaintiff's discharge will be honorable, he contends that the community and prospective employers will look askance at separation so close to eligibility for retirement. However, following discharge plaintiff may apply for relief to the Board for Correction of Naval Records, which has authority to recommend reinstatement and back pay. Thus, some courts have held that where a serviceman is honorably discharged there is a lack of the irreparable harm generally required for a preliminary injunction. *E.g., Nelson, supra* 373 F.2d at 478. Further, the Supreme Court has indicated that "temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974). However, McCormick alleges that, in addition to monetary loss, he will irretrievably lose his entitlement to medical benefits during the period of Board consideration, a loss which he feels will be substantial.

Under all the circumstances it is doubtful that plaintiff has demonstrated irreparable harm of such a magnitude as to justify issuance of a preliminary injunction, particularly in light of the traditional reluctance of courts to interfere in military affairs. However, for purposes of this analysis, I assume that plaintiff has made the requisite showing of harm that is "sufficiently serious" (using the second *Inglis* test), and thus proceed to consider the second prong of the preliminary injunction test—plaintiff's chance of success on the merits.

While I express no final views on the merits of this case, some examination of

what the facts are ultimately established to be is necessary in order to determine the propriety of a preliminary injunction.

■ Plaintiff's first claim is that the Navy failed to follow its own regulations in discharging him. It would appear that plaintiff's proposed discharge is "for the convenience of the government." The regulations governing such separations are set forth in 32 C.F.R. § 730.6. . . . The Navy states that plaintiff's discharge is pursuant to § 730.6(a)(15), which provides that the Chief of Naval Personnel may authorize or direct the separation of enlisted or inducted personnel prior to the expiration of their active obligated service dates.

"As a result of action taken with respect to the decisions or recommendations of the Naval Clemency Board, a Navy Review Board, or a Navy Enlisted Performance Board or other similar board" [here, the Petty Officer Quality Control Review Board]."

This is so, says the Navy, because the discharge resulted from a general review by the Review Board of all chief petty officers and was not a result of action initiated by plaintiff's commanding officer.

Plaintiff claims he is being discharged pursuant to § 730.6(a)(10):

"Repeated below-average or unsatisfactory markings or unfavorable or less than favorable remarks on noncommissioned or petty officer fitness or enlisted performance evaluation reports."

A footnote to this provision states that, "Requests/recommendations for separation under subpar. (10), (11), or (12) are not desired. The Chief of Naval Personnel will initiate such action where appropriate." Plaintiff's position is that either the language in the footnote is prohibitory, or it should operate here to prevent discharge on subsection 10 basis, so that commanding officers may not submit requests or recommendations for separation on the basis of evaluation reports. However, assuming, without deciding, that plaintiff's discharge falls under subparagraph (a)(10) rather than (a)(15), I am of the opinion that the

footnote language is not an absolute bar to discharge under subparagraph (a)(10). The footnote merely mandates notice to all concerned that such requests or recommendations should be made sparingly. Consequently, submission of a subparagraph 10 request or recommendation for separation does not amount to a failure to follow applicable regulations.

While it seems probable that McCormick's interest in continuing in the Navy rises to the level of a property interest, I need not decide that issue today. I believe that, assuming the existence of a property interest, the record and the evidence produced at last week's hearing demonstrate that at the trial of the merits plaintiff will not be able to show that he has not received the process which is due him.

McCormick's primary due process contention is that he did not receive adequate notice of the specific reasons for discharge. Plaintiff has, however, received annual evaluations prepared by his commanding officers. These rate plaintiff in certain specified areas (including performance deficiencies) and also contain extensive narrative remarks by his commanding officers. The 1976 and the two 1977 reports recommend plaintiff's separation from the service.

On these occasions plaintiff was given the opportunity to, and did, consult with counsel, who assisted him in preparing formal rebuttals to these adverse reports. Plaintiff also discussed these reports with his commanding officer. It is evident, therefore, that while plaintiff never received a separate piece of paper entitled "Reasons for Separation" or the like, he did, as a matter of fact, have detailed notice of the underlying reasons. *Cf. Ong v. Tovey,* 552 F.2d 305 (9th Cir. 1977).

The foregoing also establishes that plaintiff is unlikely to prevail on his other due process allegations, such as an opportunity to be heard. He had the opportunity to consult with counsel, and the opportunity to discuss the charges against him with his commanding officer, who recommended his discharge and on whose observations the Review Board must have relied very heavily. While he was not afforded a full hearing with the right to present witnesses, cross-examine, etc., he was given a meaningful opportunity to rebut the statements made in the evaluations by his "accuser" and his side of the story was therefore before the Review Board during its deliberations. I note also that in *Rew v. Ward,* 402 F.Supp. 331 at 341–344 (D.N.M.1975), a procedure very similar to that followed here was held to satisfy due process. *See also, Ong v. Tovey, supra.*

The recent case of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) is also relevant. *Mathews* identified three distinct factors which should usually be considered in determining whether the dictates of due process have been met. These are "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 355, 96 S.Ct. at 903. My evaluation of this case in light of the *Mathews* factors persuades me that the procedures followed by the Navy in deciding to discharge plaintiff do not constitute a denial of due process.

I conclude therefore that plaintiff has failed to meet even the more liberal "fair chance of success" standard set out in *Inglis* as to either of his claims, and that I must regretfully decline to issue the requested injunction. I will, however, retain jurisdiction to render a decision on the merits following exhaustion of post-discharge remedies.

█ I am acutely aware of the harsh effects of my decision for plaintiff and his family. Courts, however, should not lightly substitute their judgment for that of the military, even when the military's result may seem to be unfair. If I am called upon in the future to further consider this case, I

**626**

will not hesitate, if that be the correct result, to require plaintiff's reinstatement; but a preliminary injunction is still an extraordinary remedy and one which I do not feel can be justified here.

Based upon the foregoing, it is ORDERED that plaintiff's motion for preliminary injunction is DENIED.